FILED
United States Court of Appeals
Tenth Circuit

May 24, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

JACK WADE FLETCHER,

        Plaintiff - Appellee,

  v.

JEROME BURKHALTER,

        Defendant - Appellant,

MCINTOSH COUNTY BOARD OF
COUNTY COMMISSIONERS,
Oklahoma,

        Defendant.

No. 09-7003

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA[*]
(D.C. NO. 6:07-CV-00338-SPS)**

Submitted on the Briefs:

Chris J. Collins and Timothy M. Melton, Collins, Zorn & Wagner, P.C.,
Oklahoma City, Oklahoma, for Defendant - Appellant.

Jim Wilcoxen, Wilcoxen & Wilcoxen, Muskogee, Oklahoma, and Dennis N.
Shook, Wagoner, Oklahoma, for Plaintiff - Appellee.

---

[*]After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.

Before **HARTZ**, **MCKAY**, and **O'BRIEN**, Circuit Judges.

**HARTZ**, Circuit Judge.

Jack Wade Fletcher (Plaintiff Fletcher) sued McIntosh County Deputy Sheriff Jerome Burkhalter[1] under 42 U.S.C. § 1983.  He alleged that Deputy Burkhalter had violated his rights under the Fourth Amendment (as applied to the states under the Fourteenth Amendment, *see Mapp v. Ohio*, 367 U.S. 643, 655 (1961)), by signing a probable-cause affidavit that led to his improper arrest for engaging in a fraudulent land sale.  According to Plaintiff Fletcher, the evidence provided to Deputy Burkhalter by the victim of the fraud clearly showed that he was not the Jack Fletcher who had committed the offense.

Deputy Burkhalter sought summary judgment on the ground of qualified immunity.  The United States District Court for the Eastern District of Oklahoma denied his motion.  He appeals, contending that the evidence does not support a finding of malice, that he did not proximately cause Plaintiff Fletcher's arrest, and that a reasonable person in his position would not have recognized that his actions violated a clearly established constitutional right.  We lack jurisdiction to

---

[1]Deputy Burkhalter's last name was misspelled *Burkholter* on the district court's docket and in pleadings filed below.  We also note that he is no longer a sheriff's deputy.  But in this court the parties have referred to him as Deputy Burkhalter, and we do likewise.

consider some of Deputy Burkhalter's arguments and reject those that we have jurisdiction to consider.

## I. BACKGROUND

### A. Investigation and Arrest

On October 5, 2004, James Gollhardt reported to Deputy Burkhalter that he had been the victim of a fraudulent land sale. Gollhardt identified the seller as Jack Fletcher (Seller Fletcher) and gave Deputy Burkhalter several documents relating to the transaction. One document set forth personal information about Seller Fletcher, including his post-office box in Eufala, Oklahoma; his cell-phone number; and the license-plate number, make, model, and color of his car. With respect to his age, the document says "Estimated in his ~~70's~~ 86." Aplt. App. at 116. (When the word *70's* was crossed out is not apparent from the record.) Another sheet contained a hand-drawn map showing where Seller Fletcher lived. The map included street names, highway numbers, and the name of a nearby landmark, but did not give a town name. Gollhardt also gave Deputy Burkhalter an executed bill of sale that contained the initials "JEF" next to a minor modification of the sale terms.

Deputy Burkhalter filled out an incident report and attached to it the materials provided by Gollhardt. In addition, he searched for records under the name Jack Fletcher in an Oklahoma Department of Public Safety (DPS) database. The search yielded data on Plaintiff Fletcher, including his address, driver-license

number, and date of birth (October 19, 1970). The search also returned data on another Jack Fletcher, this one a resident of Oklahoma City, whose vehicle information matched the vehicle description provided by Gollhardt. Plaintiff Fletcher's data from the DPS were included in Deputy Burkhalter's incident report. Defendant Burkhalter contended in district court that the data were added to the report by someone else after he had signed it.

Soon after preparing the report, Deputy Burkhalter was reassigned from day to night shifts. He had no further involvement in the investigation until August 17, 2005, when he signed an affidavit prepared by the district attorney's office to obtain an arrest warrant for Plaintiff Fletcher. The criminal-case caption at the top of the affidavit named the suspect as "Jack Wade Fletcher," and included Plaintiff Fletcher's driver-license number and date of birth. The substance of the affidavit states:

> Affiant, Jerome Burkhalter is a certified police officer employed as a deputy sheriff for the McIntosh county sheriff's department. On the[]5th day of October, 2004, affiant received complaint from James Gollhardt stating that Jack Fletcher had sol[d] him property at Porum Landing for $10,000.00 on or about the 26th day of July, 2003. That the property sold to Mr. Gollhardt by Jack Fletcher did not belong to Mr. Fletcher.

> Based on this information, the undersigned prays that this Honorable Court issue a finding of fact that probable cause exists to believe that a crime has been committed and that there is probable cause to believe the defendant above named committed the crime.

Aplt. App. at 50. The state court determined that there was probable cause to arrest Plaintiff Fletcher. He was charged by a criminal information with obtaining money by false pretenses, and a felony warrant for his arrest was issued.

On February 26, 2006, Plaintiff Fletcher was stopped for a traffic violation and then arrested on the warrant. After he posted bond and retained counsel, the case against him was dismissed.

## B.    District-Court Proceedings

On October 12, 2007, Plaintiff Fletcher brought this suit against Deputy Burkhalter and the Board of County Commissioners of McIntosh County. An amended complaint added Terry Jones, the McIntosh County Sheriff, as a defendant. Plaintiff Fletcher alleged causes of action under 42 U.S.C. § 1983, Oklahoma's common law of negligence, and Oklahoma's government-torts statute. The district court entered summary judgment for the Board and Jones on all claims, and granted summary judgment to Deputy Burkhalter on Plaintiff Fletcher's state-law claims.

As for the § 1983 claim against Deputy Burkhalter, he argued that he was entitled to qualified immunity because (1) the factual statements in his affidavit were true, (2) he had "not 'knowingly or recklessly ma[d]e a false statement in an affidavit in support of an arrest or search warrant,'" Aplt. App. at 43 (quoting *Bruning v. Pixler*, 949 F.2d 352, 357 (l0th Cir. 1991)), and (3) the district

attorney's and judge's actions were superseding causes of Plaintiff Fletcher's arrest.

Because Plaintiff Fletcher had been arrested on a judicial warrant, the district court analyzed Deputy Burkhalter's § 1983 constitutional-tort claim by analogizing it to the common-law tort of malicious prosecution. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1285–91 & n.3 (l0th Cir. 2004) (the elements of the common-law tort are merely a starting point; they are not dispositive). The elements of such a claim are (1) initiation of the action against the plaintiff by the defendant, (2) termination of the action in favor of the plaintiff, (3) lack of probable cause to initiate the action by the arrest, (4) malice of the defendant (which, the parties agree, requires intentional or reckless disregard of the truth), and (5) damages. *See id.* at 1286, 1291–97. The district court ruled that there was sufficient evidence to raise a bona fide factual issue regarding each element of the constitutional tort, and it therefore denied Deputy Burkhalter's motion for summary judgment on the § 1983 claim.

On appeal Deputy Burkhalter does not contest the district court's rulings that the original action terminated in Plaintiff Fletcher's favor, that there was not probable cause for Plaintiff Fletcher's arrest, or that Plaintiff Fletcher suffered damages. He argues (1) that the evidence does not support a finding of the requisite malice, (2) that his actions were not the proximate cause of Plaintiff Fletcher's arrest or prosecution (that is, he is not responsible for the initiation of

the action against Plaintiff Fletcher), and (3) that a reasonable person in his position would not have recognized that his actions violated a clearly established constitutional right. As we now explain, (1) we lack jurisdiction to review his argument regarding malice; (2) to the extent that we have jurisdiction to review his proximate-cause argument, we affirm the district court; and (3) we affirm the district court on his clearly-established-law argument because it amounts to no more than a recharacterization of his other arguments.

## II. DISCUSSION

Deputy Burkhalter contends that the § 1983 claim against him is barred by the qualified-immunity doctrine. Under that doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant pleads qualified immunity, the plaintiff bears the burden of (1) presenting evidence that the defendant's actions violated a federal constitutional or statutory right and (2) showing that the federal right was clearly established at the time of the challenged conduct. *See Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). Although the plaintiff bears this burden, the evidence is reviewed in the light most favorable to the plaintiff when, as here, the defendant seeks summary judgment on the ground of qualified immunity. *See id.* at 1115.

Qualified immunity protects public servants not only from liability, but also from the burdens of litigation. *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1945–46 (2009). Thus, in certain circumstances a defendant claiming qualified immunity is entitled to appeal from a district-court denial of a motion for judgment on the pleadings or a motion for summary judgment, even though such denials are ordinarily not final judgments appealable under 28 U.S.C. § 1291. *See id.* A denial of qualified immunity may be an appealable "collateral order" when the denial satisfies the conditions that it "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Johnson v. Jones*, 515 U.S. 304, 310 (1995) (brackets in *Johnson*; internal quotation marks omitted). As the Supreme Court has explained:

> The requirement that the issue underlying the order be "effectively unreviewable" later on . . . means that failure to review immediately may well cause significant harm. The requirement that the district court's order "conclusively determine" the question means that appellate review is likely needed to avoid that harm. The requirement that the matter be separate from the merits of the action itself means that review *now* is less likely to force the appellate court to consider approximately the same (or very similar) matter more than once, and also seems less likely to delay trial court proceedings (for, if the matter is truly collateral, those proceedings might continue while the appeal is pending).

*Id.* at 311 (citations and internal quotation marks omitted).

Not all denials of qualified immunity satisfy these requirements for an appealable collateral order. In *Johnson* the Supreme Court held that the

-8-

defendant could not appeal a denial of a summary-judgment motion that raised "only a question of 'evidence sufficiency.'" 15 U.S. at 313. The Court suggested that such questions generally do not satisfy the collateral-order requirement that they be "completely separate from the merits of the action" and also noted that district judges have much greater experience with such questions than do appellate judges. *See id.* at 314–18. It further observed that interlocutory review of an evidence-sufficiency issue can lead to duplicative review because "in the many instances in which [the appellate court] upholds a district court's decision denying summary judgment, [it] may well be faced with approximately the same factual issue again, after trial, with just enough change (brought about by the trial testimony) to require it, once again, to canvass the record." *Id.* at 316–17. The Court concluded:

> [C]onsiderations of delay, comparative expertise of trial and appellate courts, and wise use of appellate resources argue in favor of limiting interlocutory appeals of "qualified immunity" matters to cases presenting more abstract issues of law. Considering these competing considerations, we are persuaded that immunity appeals interfere less with the final judgment rule if they are limited to cases presenting neat abstract issues of law.

*Id.* at 317 (brackets, ellipsis, and internal quotation marks omitted); *see Gross v. Pirtle*, 245 F.3d 1151, 1156–57 (10th Cir. 2001) ("[W]e lack jurisdiction only if our review would require second-guessing the district court's determinations of evidence sufficiency.").

We now turn to the arguments raised by Deputy Burkhalter on appeal. We recognize that "the categories of 'fact-based' and 'abstract' legal questions used to guide the Court's decision in *Johnson* are not well defined." *Iqbal*, 129 S. Ct. at 1947. But the application of *Johnson* appears to us to be noncontroversial in this case. Our analysis differs for each of Deputy Burkhalter's three arguments.

### A.    Malice

We lack jurisdiction to consider Deputy Burkhalter's argument that the district court erred in holding that there is sufficient evidence to support a finding of malice. Such a determination is a quintessential evidence-sufficiency issue. Indeed, intent was the one issue singled out by the Court in *Johnson* in explaining why evidence-sufficiency issues should not be addressed in interlocutory appeals. It wrote:

> Many constitutional tort cases, unlike the simple "we didn't do it" case before us, involve factual controversies about, for example, intent—controversies that, before trial, may seem nebulous. To resolve those controversies—to determine whether there is or is not a triable issue of fact about such a matter—may require reading a vast pretrial record, with numerous conflicting affidavits, depositions, and other discovery materials.

515 U.S. at 316. Even if this case does not present "a vast pretrial record," the Supreme Court "decide[s] appealability for categories of orders rather than individual orders," and does not "in each individual case engage in ad hoc balancing to decide issues of appealability." *Id.* at 315. We follow the Supreme Court's guidance in holding that the sufficiency of the evidence of malice is not

-10-

an appealable issue when qualified immunity is denied, particularly because we see no abstract legal issue in whether Deputy Burkhalter acted with malice. We find support in our recent summary ruling that we lacked jurisdiction in a qualified-immunity appeal to consider whether the district court had erred in deciding that the defendant's motive was a factual dispute for the jury to resolve. *See McBeth v. Himes*, 598 F.3d 708, 717 (10th Cir. 2010). Accordingly, we dismiss Deputy Burkhalter's appeal on this issue.

**B.   Causation**

Deputy Burkhalter contends that even if he erred in his affidavit, "[t]he acts of the DA's Office (drafting the probable-cause affidavit for Deputy Burkhalter to sign and filing charges against Plaintiff) and the acts of the district court (finding that probable cause existed for Plaintiff's arrest and issuing a felony warrant) superseded Deputy Burkhalter's act of merely signing the affidavit as the cause of Plaintiff's arrest[,]" and that "[t]herefore, Deputy Burkhalter was not the proximate cause of any Fourth Amendment or other constitutional violation." Aplt. Br. at 13. We have jurisdiction to review one component of this argument, but nothing more.

The abstract legal issue that we can review is whether the acts of the district attorney or the judge can or must be considered superseding causes of Plaintiff Fletcher's injuries. But our review can be brief. The issue was resolved by our decision in *Pierce*. In that case defendant Gilchrist had allegedly provided

false forensic analyses leading to the charges against Pierce. Gilchrist argued that "[s]ince she was not involved in Mr. Pierce's arrest nor was she responsible for filing charges, . . . as a matter of law, she is not liable for her alleged fabrication of evidence and failure to disclose exculpatory evidence." 359 F.3d at 1291. We rejected the argument:

> Gilchrist cannot "hide behind" the fact that she neither initiated nor filed the charges against Mr. Pierce. The actions of a police forensic analyst who prevaricates and distorts evidence to convince the prosecuting authorities to press charges is no less reprehensible than an officer who, through false statements, prevails upon a magistrate to issue a warrant. In each case the government official maliciously abuses a position of trust to induce the criminal justice system to confine and then to prosecute an innocent defendant.

*Id.* at 1293. We noted that we had "previously held that officers who conceal or misrepresent material facts to the district attorney are not insulated from a § 1983 claim for malicious prosecution simply because the prosecutor, grand jury, trial court, and appellate court all act independently to facilitate erroneous convictions." *Id.* at 1292. Accordingly, we reject Deputy Burkhalter's argument that the approvals of the district attorney and the judge absolved him of liability, and we affirm the denial of summary judgment on that issue.

To the extent that Deputy Burkhalter is relying on the specific facts of this case to argue that he was not responsible for Plaintiff Fletcher's arrest, he is raising merely an evidence-sufficiency issue, and we therefore lack jurisdiction to review his argument. We recognize that in *Pierce* we reviewed the particulars of

the case in rejecting the qualified-immunity argument. But *Pierce* concerned the denial of a motion to dismiss the complaint. There was no need to review the evidence in the record, because the allegations of the complaint are deemed true on a motion to dismiss. As the Supreme Court stated in *Iqbal*, "The concerns that animated the decision in *Johnson* are absent when an appellate court considers the disposition of a motion to dismiss the complaint for insufficient pleadings." 129 S. Ct. at 1947.

## C. Clearly Established Law

Deputy Burkhalter entitles a section of his opening brief, "A Reasonable Person in Defendant's Position Would Not Have Recognized That Deputy Burkhalter's Actions Violated a Clearly Established Constitutional Right." Aplt. Br. at 18. But this section fails to argue that any legal doctrine relied on by the district court had not been clearly established law at the time of his challenged conduct. Rather, he merely reiterates his malice and causation arguments. He asserts that he did nothing wrong; that if he did, he was at most merely negligent; and that he was not the cause of Plaintiff Fletcher's arrest. Then he argues that the law was not clearly established that an officer can be liable despite having acted without malice and despite not having been the proximate cause of the violation of the plaintiff's constitutional rights. The district court, however, held that there was sufficient evidence to support findings of both malice and causation. Thus, Deputy Burkhalter's clearly-established-law argument depends

on his successfully challenging those holdings.  Because we have refused to reverse those holdings, this argument must fail.

## III.  CONCLUSION

We lack jurisdiction to review the district court's determinations of factual sufficiency, and the district court did not err on the abstract issues of law raised by Deputy Burkhalter.  We therefore AFFIRM the district court's denial of Deputy Burkhalter's motion for summary judgment.