**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 4, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TAMMY CALVERT,

  Plaintiff-Appellant,

v.

JENNIFER EDIGER,

  Defendant-Appellee.

No. 10-3081
(D.C. No. 6:08-CV-01050-MLB)
(D. Kansas)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **McKAY**, and **O'BRIEN**, Circuit Judges.

I.    **Introduction**

    Tammy Calvert was prosecuted for contempt of court based on her failure

to report her son's probation violation.  After the charge was dismissed, Calvert

sued her son's probation officer, Jennifer Ediger, under 42 U.S.C. § 1983 for the

constitutional tort of malicious prosecution.  The district court granted Ediger

summary judgment based on qualified immunity, concluding Calvert failed to

offer sufficient evidence from which a jury could reasonably find Ediger caused

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

the prosecution.  Exercising jurisdiction under 28 U.S.C. § 1291, this court **AFFIRMS** the judgment of the district court.

## II.    Background

In 2007, Calvert's juvenile son, Christopher Winter, was serving a term of probation.  The order of probation required Christopher to regularly attend school and not to be away from home without parental supervision.  It also required Christopher's parents to immediately report any probation violations to Ediger, Christopher's probation officer.

During the term of probation, Christopher and a friend left Calvert's house in the middle of the night and took Calvert's car and the debit card belonging to his sister's boyfriend without permission.  They purchased gas with the debit card, drove around for a few hours, and returned home.  The next morning Calvert noticed the gas tank was full and the car had mud on it.  She suspected Christopher had taken the car, but when she asked him, he denied it.  Calvert also suspected her nephew might have taken the car.  Since she did not have proof that Christopher was responsible for the incident with the car, she did not report the incident to Ediger.

About one week later, after Calvert had gone to work, Christopher refused to go to school.  According to Calvert, Christopher's father came to Calvert's place of employment to inform her about Christopher's refusal to go to school.  Thereafter, the school principal called Calvert at her workplace and reported he

-2-

overheard Christopher and his friend bragging about taking her car and a debit card. The principal also called Ediger to inform her of the incident. Calvert testified that she was unable to call Ediger immediately because she is not permitted to make long distance calls from work and does not bring her cell phone to work pursuant to her employer's policy. Instead, to respond to the situation, Calvert drove home at lunch and found Christopher and his father. At that time, Christopher admitted responsibility for the incident with the car. A few minutes later, Ediger arrived at the house.

Calvert testified Ediger yelled at her and threatened to put her in jail if she did not press charges against Christopher for taking her car. Calvert explained she had just learned of Christopher's responsibility and had not had time to call Ediger, but that she would not press charges against her son until she had spoken with her son's attorney. Ediger repeated the threat to put Calvert in jail as Calvert got in her car to return to work.

Ediger wrote an arrest and detain order pertaining to Christopher and accompanying affidavit to revoke probation in which she stated that Christopher "stole[]" Calvert's car and a credit card and that Calvert failed to report it. Ediger then spoke to the County Attorney, Laurel McClellan, about Calvert's failure to report the incident, a conversation Ediger initially denied. McClellan testified he advised Ediger to prepare a report about the incident. Ediger drafted a letter to McClellan stating Christopher had "taken" his mother's car and a credit

card and that during a home visit Calvert confirmed the incident. Ediger also stated Calvert did not notify Ediger or other law enforcement. McClellan testified he had the impression, either from Ediger's communications or communications with other law enforcement officers, that Calvert knew of the incident with the car soon after it occurred. Ediger testified she was unsure when Calvert came to know of the incident with the car.

Under Kansas law, a parent who fails to comply with an order to report any violation of probation committed by their child may be cited for indirect contempt. Kan. Stat. Ann. § 38-2363. To initiate indirect contempt proceedings in Kansas, a motion must be filed requesting an order to appear and show cause why the individual should not be held in contempt and it must be accompanied by an affidavit setting forth the facts constituting the alleged violation. *Id.* § 20-1204a(a). The individual must be served with the order and supporting affidavit, and the order must give the individual notice of the hearing. *Id.* § 20-1204a(b). Only if the individual fails to appear or intentionally avoids service of the order can the court then issue a bench warrant. *Id.* § 20-1204a(c). In contrast, direct contempt, which must be based on an act committed in court proceedings before a judge, may be punished summarily without the process provided in indirect contempt proceedings. *Id.* §§ 20-1202 to -1203.

McClellan testified he instructed his secretary to prepare a motion for an order to appear and show cause, thereby intending to commence indirect contempt

proceedings. He further testified his secretary mistakenly prepared a motion for revocation of probation, which resulted in the opening of a criminal case for direct contempt and request for a bench warrant for Calvert's arrest. In addition, there was no affidavit or sworn statement accompanying the motion and request for a warrant. McClellan stated he did not adequately review the paperwork and signed it without realizing the mistakes. The secretary, however, testified she would not have opened a criminal case without being specifically instructed to do so, and that McClellan always prepared paperwork necessary for indirect contempt proceedings himself because the requisite form was on his computer, not hers.

Despite the lack of supporting probable cause affidavit, a warrant was issued. Calvert was arrested and then released on bond; the proceedings against her were subsequently dismissed. In dismissing the case, the state court found there was no statutory authority for the arrest because the facts as alleged by the government constituted only indirect contempt and the arrest warrant was unsupported by a probable cause affidavit. As a result, the court ordered the county to pay all fees and expenses Calvert incurred in conjunction with the arrest.

Calvert brought a civil suit pursuant to 42 U.S.C. § 1983 against Ediger, McClellan, the judge who issued the bench warrant, and the arresting officer. The district court dismissed the case as to all defendants except Ediger based on

prosecutorial and judicial immunity. Ediger moved for summary judgment, invoking a defense of qualified immunity. The parties agree that Calvert's claim against Ediger is properly analyzed as a constitutional tort claim analogous to malicious prosecution. *See Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010) (explaining that such analysis applies when an alleged constitutional violation arises out of an arrest based on a judicial warrant). The district court granted Ediger's motion, concluding Calvert failed to demonstrate sufficient facts to establish a constitutional violation and Ediger was therefore entitled to qualified immunity. The instant appeal followed.

## III. Discussion

Government officials performing discretionary functions are entitled to qualified immunity from suit for conduct that does not violate clearly established law "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff who must establish (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007) (en banc). This court reviews a grant of summary judgment based on qualified immunity de novo, applying the same standard as did the district court and reviewing the evidence in the light most favorable to the non-moving party. *Id.* at 1115.

Section 1983 actions can be maintained against a person who "subjects, or causes to be subjected" any other person to a violation of rights secured by the Constitution. 42 U.S.C. § 1983. To prevail on a claim brought pursuant to § 1983, a plaintiff must demonstrate the defendant was both the but-for and proximate cause of the plaintiff's injury. *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006). Proximate cause can be established by showing the defendant set in motion events that he knew or should have known would cause the alleged deprivation of rights. *Id.* Just as in tort law, however, a defendant is not liable in a § 1983 action if there was a superseding cause of the constitutional violation. *Id.*

With respect to a § 1983 action for malicious prosecution, the "'principal player in carrying out a prosecution . . . is not police officer but prosecutor.'" *Taylor v. Meacham*, 82 F.3d 1556, 1563 n.8 (10th Cir. 1996) (quoting *Albright v. Oliver*, 510 U.S. 266, 279 n.5 (1994) (Ginsburg, J. concurring)). Accordingly, an officer typically does not proximately cause a malicious prosecution because the independent decisions of the prosecutor in bringing the charge and the court in issuing a indictment or warrant constitute superseding causes that break the chain of causation. *See id.* at 1564. Nonetheless, officers are not shielded from liability if a causal connection can be established demonstrating that the prosecutor's and court's actions were not truly independent causes. *Pierce v. Gilchrist*, 359 F.3d 1279, 1292-93 (10th Cir. 2004). Most commonly, officers can

be liable for malicious prosecution if they conceal or misrepresent material facts to the prosecutor, whose judgment was thereby influenced by the misstatements. *Id.* Such a demonstration is sufficient to meet the causation requirements of § 1983. *See id.*

Here, the district court granted summary judgment to Ediger based on Calvert's failure to provide sufficient evidence from which a reasonable jury could conclude that Ediger caused the prosecution.[1] Calvert argues the district court erred by requiring her to demonstrate Ediger made false or misleading statements, asserting that a false statement is not required to show causation. In the alternative, Calvert asserts that she met her burden to show Ediger made materially misleading statements to McClellan.

This court agrees a plaintiff is not required to show false statements, but rather may demonstrate a causal link in other ways.[2] For instance, in some

---

[1]The district court ruled, in the alternative, that even if Calvert had demonstrated a constitutional violation, the violation was not clearly established. Additionally, Ediger argues that even if Calvert provided sufficient evidence of causation, she failed to demonstrate other essential elements of the constitutional tort. This court need not reach these questions given our conclusion that the district court's ruling on causation was correct.

[2]The district court can hardly be faulted for its articulation of the causation standard in which it required Calvert to demonstrate Ediger made materially false or misleading statements given Calvert's reliance on that theory in her briefing below. There, Calvert's sole authority cited in support of her causation argument was *Pierce v. Gilchrist*, a case in which this court concluded allegations an investigator "fabricated inculpatory evidence and disregarded exculpatory evidence" were sufficient to support causation of the subsequent prosecution. 359

(continued...)

circumstances causation may be demonstrated by showing the officer exerted undue influence over the prosecuting authority. *See Hartman v. Moore*, 547 U.S. 250, 262-63 (2006). Nonetheless, Calvert has failed to demonstrate sufficient evidence under any theory of causation.

Calvert cannot show Ediger materially misled the County Attorney or the court. An officer's misstatements must be material to the determination of probable cause for the misrepresentations to sufficiently demonstrate a causal link. *See, e.g., Fletcher*, 605 F.3d at 1094 (upholding denial of qualified immunity to officer who attested to probable cause that the plaintiff fraudulently sold land although the database search the officer conducted indicated the complaining witness had identified a different individual); *Pierce*, 359 F.3d at 1293-94 (upholding denial of qualified immunity to forensic chemist who allegedly falsified scientific hair analysis to inculpate plaintiff and failed to report exonerating semen analysis). Calvert argues Ediger's letter to McClellan was materially misleading by stating Calvert knew and failed to report her son's violation. She asserts Ediger should have explained Calvert did not know of Christopher's violation until the same day as Ediger and was unable to report the violation sooner. Calvert further asserts the letter was misleading in stating that Christopher had taken Calvert's car, when in fact he went joyriding and quickly

_____

[2](...continued)
F.3d 1279, 1281 (10th Cir. 2004). Calvert likewise argued Ediger made false and misleading statements that caused the prosecution at issue here.

returned the car. Compounding the problem, Calvert argues, is Ediger's statement in her affidavit to revoke Christopher's probation, that Christopher stole the car. Calvert contends these statements made Christopher's probation violation seem more serious than it was. Finally, Calvert asserts the prosecutor's statement that he was under the impression Calvert knew of her son's violation soon after it occurred indicates Ediger misled the prosecutor.

Even if we agreed with Calvert that she presented sufficient evidence from which a jury could conclude Ediger misled McClellan as to the timing of Calvert's knowledge and the severity of Christopher's probation violation, none of those alleged misstatements or omissions are material. It is undisputed that no version of the facts, even as allegedly reported by Ediger, supported the direct contempt charge on which Calvert was arrested. An officer's misrepresentations can cause a prosecutor to lose his independence when those misrepresentations contribute to the prosecutor's evaluation of the case and decision to bring charges. No misrepresentation can have such an effect when, even as allegedly misrepresented, the facts presented to the prosecutor do not support probable cause for the charge brought. *See Taylor*, 82 F.3d at 1562 (concluding there was insufficient evidence of proximate cause when "the inaccurate statements in the arrest warrant affidavit, as well as the information omitted, would not have altered the probable cause determination"). Calvert has offered no evidence that

-10-

McClellan's decision to prosecute her without probable cause was anything other than an independent act, not foreseeable by Ediger.

Ediger's alleged misstatements likewise could not have misled the court into issuing a warrant without probable cause. As found by the state court in dismissing the charge against Calvert, the warrant was issued without any supporting affidavit or sworn statement as required by Kansas law and without any statutory authority based on the facts presented to the court. Calvert points to nothing in the record that would show the state court's error in issuing the warrant was anything other than another independent, superseding cause of Calvert's prosecution. *Cf. Fletcher*, 605 F.3d at 1094, 1098 (concluding there was sufficient evidence of causation where officer's alleged misrepresentations were passed on not only to the prosecutor, but also in a probable cause affidavit submitted to the court).

Alternatively, Calvert argues she has produced sufficient evidence to show Ediger improperly colluded with or influenced McClellan. In support of this argument, she first points to Ediger's conversation with McClellan prior to filing her written letter and Ediger's initial denial of that conversation. Calvert also identifies as suspicious McClellan's claim to have filed the paperwork opening a criminal case in error, citing the secretary's testimony that such an error would not have occurred given how paperwork was handled in the office. Even if these facts were sufficient to allow a jury to infer Ediger colluded with or influenced

McClellan, Calvert has offered no evidence that would support a finding that the influence extended to the judge who issued the warrant. Rather, Calvert makes the bare assertion that a judge would not issue a warrant without any affidavit to support probable cause if no improper influence had been used. There is no question the warrant was unlawful without a supporting affidavit and the facts as stated in the application for the warrant, even if true, do not constitute the crime charged. Calvert's assertion that the warrant's issuance was the product of influence rather than error is, however, mere speculation. Calvert has not offered sufficient evidence to support any theory under which Ediger proximately caused the prosecution.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

ENTERED FOR THE COURT

Michael R. Murphy
Circuit Judge