FILED
United States Court of Appeals
Tenth Circuit

April 4, 2017

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

NICHOLAS J. AURELIO,

    Plaintiff - Appellant,

v.

JONATHAN M. JOYCE; LYNETTE
NEDERHOED; HEATHER HOHNHOLZ,

    Defendants - Appellees,

and

LARA J. MULLIN, HEATHER SOUTH,
MARION ALLISON ROCKER-TUOHY,
CITY AND COUNTY OF DENVER
COLORADO,

    Defendants.

No. 16-1255
(D.C. No. 1:15-CV-01540-WJM-CBS)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **KELLY**, **MATHESON**, and **McHUGH**, Circuit Judges.
_____

    [*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Prisoner Nicholas J. Aurelio appeals from a district court order that dismissed his 42 U.S.C. § 1983 claim against Denver police detectives Lynette Nederhoed and Heather Hohnholz. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

BACKGROUND

In early 2013, Aurelio was arrested multiple times for domestic-violence incidents against Heather South. According to Aurelio, South told police he should not have been arrested, as she had fabricated the incidents "to solve financial issues" with him. Aplt. App. at 14.

In July 2013, South leveled new charges against Aurelio, and he was arrested for, among other things, witness tampering and bribery. Aurelio posted bond and was released from custody. Two months later, in September 2013, he was arrested on charges that included kidnapping and sexually assaulting South. He was held in the Van Cise Simonet Detention Center pending trial in state court.

South soon complained to the Denver police department that Aurelio had emailed her from the Center's "Westlaw computer." *Id.* at 16. Detectives Nederhoed and Hohnholz allegedly "persuade[d] the Denver Sheriff's Office to terminate [Aurelio's] telephone and Westlaw privileges a[n]d place [him] on a 23 hour lockdown." *Id.* at 17. Further, Detective Nederhoed charged Aurelio with a misdemeanor for violating a protective order prohibiting contact with South.

In 2014, Aurelio plead guilty to the witness tampering and bribery charges. The misdemeanor charge for emailing South was dismissed.

2

In July 2015, while awaiting trial on the kidnapping and sexual-assault case, Aurelio retained counsel and filed a § 1983 suit against Nederhoed, Hohnholz, South, and others in federal district court. Aurelio advanced five claims for relief. The district court screened the case under 28 U.S.C. § 1915A, and dismissed all but claim three. In that claim, Aurelio complained of Nederhoed and Hohnholz's involvement in placing him in solitary confinement and depriving him of telephone and Westlaw privileges. He alleged that these conditions violated his Fourteenth Amendment due-process rights.

In October 2015, a jury found Aurelio guilty in the kidnapping and sexual-assault case. The § 1983 suit continued.

On the defendants' motion, the district court found that Nederhoed and Hohnholz were entitled to qualified immunity on claim three, and it dismissed the claim. Aurelio now appeals, asserting that claim three includes malicious-prosecution and right-to-counsel components, but he does not address Fourteenth Amendment due process.[1]

## DISCUSSION

### I. Standards of Review

"This court reviews de novo a district court's grant of a motion to dismiss based on qualified immunity." *Weise v. Casper*, 593 F.3d 1163, 1166 (10th Cir. 2010). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

[1] Aurelio's failure to argue on appeal that the district court erred in dismissing his due-process claim waives any such argument. *See Silverton Snowmobile Club v. U.S. Forest Serv.*, 433 F.3d 772, 783 (10th Cir. 2006). And to the extent Detective Jonathan Joyce was identified as an appellee, Aurelio has abandoned any challenge to Joyce's dismissal from the case.

3

662, 678 (2009) (internal quotation marks omitted). To avoid dismissal when qualified immunity is raised, "[t]he plaintiff must establish (1) that the defendant violated a constitutional or statutory right, and (2) that this right was clearly established at the time of the defendant's conduct." *McBeth v. Himes*, 598 F.3d 708, 716 (10th Cir. 2010) (internal quotation marks omitted).

## II. Malicious Prosecution

Aurelio contends that his third claim for relief contains a Fourth Amendment malicious-prosecution component. The crux of his argument seems to be that the district court erred in dismissing the third claim without addressing malicious prosecution. We disagree for multiple reasons.

First, claim three's allegations target a violation of the "liberty interests" guaranteed by the "Fourteenth Amendment." Aplt. App. at 24. Indeed, the claim's allegations culminate in the assertion that Nederhoed and Hohnholz "knew that the imposition of atypical and significant restrictions on a detainee without due process of law was a clearly established violation of the Fourteenth Amendment." *Id.* This language suggests a conditions-of-confinement challenge (brought by a sentenced prisoner), not a malicious-prosecution claim. *See Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005) (noting that "a liberty interest in avoiding particular conditions of confinement may arise from state policies or regulations" which "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" (internal quotation marks omitted)).

4

Second, claim three neither mentions "malicious prosecution" nor addresses the elements of such a claim. Specifically, "a § 1983 malicious prosecution claim includes five elements: (1) the defendant caused the plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of the plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) the defendant acted with malice; and (5) the plaintiff sustained damages." *M.G. v. Young*, 826 F.3d 1259, 1262 (10th Cir. 2016) (internal quotation marks omitted). At the very least, missing from claim three is an allegation explaining why the case against Aurelio for emailing South was dismissed. A viable malicious prosecution claim requires "that the criminal proceedings were dismissed for reasons indicative of innocence, and not because of an agreement of compromise, an extension of clemency, or technical grounds having little or no relation to the accused's guilt." *M.G.*, 826 F.3d at 1262. Further, claim three does not allege that Nederhoed and Hohnholz acted with malice by "intentional[ly] or reckless[ly] disregard[ing] . . . the truth," *Fletcher v. Burkhalter*, 605 F.3d 1091, 1095 (10th Cir. 2010). While claim three does allege "there was no probable cause on which to base a case" for emailing South, Aplt. App. at 23, that allegation is merely conclusory and insufficient by itself to state a malicious-prosecution claim, *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Third, in their motion to dismiss, the defendants questioned whether Aurelio was "asserting a claim against . . . Nederhoed[ ] and Hohnholz that there was no probable cause for his arrest related to" the email incident. Aplt. App. at 31 n.3; *see also id.* at 43

5

n.8.  In response, Aurelio characterized claim three as a challenge to their "plan to impede [his] efforts to prepare a defense to the July and September [2013] cases" in violation of the Fifth and Sixth Amendment guarantees of "effective assistance of counsel" and the Fourteenth Amendment prohibition on conduct that "shocks the contemporary conscience."  Aplt. App. at 54, 56.  This characterization points to claims other than malicious prosecution.  "A litigant is not entitled to disavow a claim before one court only to spring it on his opponent at the next stage of the proceedings."  *Simmat v. U.S. Bur. of Prisons*, 413 F.3d 1225, 1239-40 (10th Cir. 2005).

Accordingly, we conclude that the district court did not err in not considering whether Nederhoed and Hohnholz  maliciously prosecuted him for emailing South, as that claim was not plead.  *See Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55, 67 (2d Cir. 2006) (declining to consider claim that was "absent from the complaint and raised for the first time on appeal"); *Graham v. Contract Transp., Inc.*, 220 F.3d 910, 913 (8th Cir. 2000) (declining to consider theory for recovery "not raised in either [plaintiff's] complaint or his opposition to summary judgment"); *see also Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1127, 1130-31 (10th Cir. 2011) (holding that alternative legal theory not pled in the complaint or otherwise raised in the district court was forfeited, and in the absence of a plain-error argument, was beyond appellate review).

### III.  Right to Counsel

Aurelio next argues that Nederhoed and Hohnholz "caused [him] to be placed in solitary confinement without phone privileges so he could [not] talk to his attorney[,] in violation of his Sixth Amendment right to counsel."  Aplt. Opening Br. at 14.  The

district court rejected this argument on alternative grounds: either Aurelio had not adequately plead a right-to-counsel violation in claim three; or he had not plead a violation of a clearly established right. We agree with the district court's resolution.

In regard to counsel, Aurelio alleged in claim three only that Nederhoed and Hohnholz had "convinced the Sheriff's Office to . . . deny him telephone contact with his attorneys," thereby " adversely affect[ing] his ability to prepare a defense." Aplt. App. at 23. This sole allegation hardly "inform[s] the defendants of the actual grounds of the claim against them." *Robbins v. Okla.*, 519 F.3d 1242, 1248 (10th Cir. 2008). "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief." *Id.* at 1247 (internal quotation marks omitted). Indeed, "the Sixth Amendment does not require in all instances full and unfettered contact between an inmate and counsel." *Mann v. Reynolds*, 46 F.3d 1055, 1060 (10th Cir. 1995). Thus, Aurelio's general allegation that he was denied telephone contact with his attorneys—without regard to the duration of the contact restriction, the nature of the legal proceedings happening at the time, or the type of harm that resulted— is insufficient to show that he "plausibly (not just speculatively) has a claim for relief," *Robbins*, 519 F.3d at 1247. *See United States v. Morrison*, 449 U.S. 361, 365 (1981) (stating that relief for infringement on the right to counsel requires "some adverse effect upon the effectiveness of counsel's representation or . . . some other prejudice to the defense"); *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977) (concluding that plaintiff "fell short of making out a § 1983 case" based on undercover agent's presence at two meetings between plaintiff and his criminal defense attorney because there was "no

7

tainted evidence in this case, no communication of defense strategy to the prosecution, and no purposeful intrusion by [the agent]"); *Geders v. United States*, 425 U.S. 80, 91 (1976) (holding that trial court's order prohibiting defendant from consulting with his attorney during an overnight trial recess violated the Sixth Amendment).

Nor has Aurelio met his burden of showing the violation of a clearly established right. Indeed, he has not even attempted to show that the contours of his right-to-counsel claim are sufficiently clear in light of the "*particular* conduct" alleged and "the specific context of the case" so that "every reasonable official would have understood . . . what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (internal quotation marks omitted). Aurelio has not identified, and we have not found, a case defining the contours of a pretrial detainee's right to counsel when that right is restricted by confinement conditions enacted for the victim's protection. *See id.* ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate.").

Finally, to the extent Aurelio's right-to-counsel claim implies the invalidity of his kidnapping and sexual-assault conviction by alleging that the "restrictions [on his confinement] adversely affected his ability to prepare a defense," Aplt. App. at 23, the claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under *Heck*, a plaintiff may "not bring a civil-rights claim for damages under § 1983 based on actions whose unlawfulness would render an existing criminal conviction invalid." *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015); *see, e.g.*, *Valdez v. Rosenbaum*, 302 F.3d 1039, 1049 (9th Cir. 2002) (prisoner's Sixth Amendment claim of denial of access to counsel while a

8

pretrial detainee barred by *Heck* because claim would necessarily imply invalidity of subsequent conviction).

## CONCLUSION

The judgment of the district court is affirmed.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge