FILED
United States Court of Appeals
Tenth Circuit

August 24, 2010

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ROBERT A. DEUTSCH,

        Plaintiff - Counter-
        Defendant - Appellee,

    v.

JANINE JORDAN, individually and in
her official capacity, also known as
Laramie City Manager; LARAMIE
WYOMING, a Wyoming municipal
corporation,

        Defendant - Counter-
        Claimants - Appellants.

No. 09-8042

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 2:08-CV-00191-ABJ)**

M. Gregory Weisz, Pence and MacMillan LLC, Laramie, Wyoming, for
Defendant - Counter-Claimants - Appellants.

Charles M. Aron (Galen B. Woelk, with him on the brief), Aron and Hennig, LLP,
Laramie, Wyoming, for Plaintiff - Counter-Defendant - Appellee.

Before **BRISCOE**, **MCKAY**, and **HARTZ**, Circuit Judges.

**HARTZ**, Circuit Judge.

After being fired as police chief, Robert Deutsch filed federal civil-rights and state-law claims against the City of Laramie, Wyoming, and city manager Janine Jordan. He alleged that he was terminated in retaliation for bringing a defamation lawsuit against a private citizen and for his testimony during that litigation. The United States District Court for the District of Wyoming granted summary judgment to the defendants on all claims except for Mr. Deutsch's claim that Ms. Jordan had retaliated against him for exercising his right to free speech, thereby violating the First Amendment (as applied to the states under the Fourteenth Amendment, *see Petersen v. Utah Dept. of Corr.*, 301 F.3d 1182, 1191 (10th Cir. 2002)).

Ms. Jordan appeals the denial of her motion for summary judgment on that claim, contending that she is entitled to qualified immunity. Mr. Deutsch filed a motion to dismiss the appeal for lack of jurisdiction, but we deferred ruling on the motion until briefing and argument on the merits. We deny the motion in part. We have jurisdiction to review the district court's ruling that Mr. Deutsch's testimony in his civil suit was on a matter of public concern. And on the merits we affirm that ruling. But we also grant the motion in part. We lack jurisdiction to review the district court's determination that there is a genuine issue of fact regarding whether Ms. Jordan fired Mr. Deutsch because she believed he had lied during his defamation-suit testimony.

I.     PRELIMINARIES

-2-

## A. Factual Background

In the summer of 2007, Mr. Deutsch used City petty cash to purchase a laptop computer for $1,433.11. The purchase violated City policy. But the violation was apparently unknown to the public until a city-council meeting in May 2008. At the meeting Tim Hale, a private citizen, stated that there might have been a misappropriation of City petty cash by a department director and inquired how such a matter would be handled. He provided no specifics. Hale allegedly later sent a letter to Ms. Jordan regarding Mr. Deutsch that referred to the $1,433.11 spent for the laptop. Thereafter, Mr. Deutsch filed a defamation lawsuit against Hale in small-claims court. Trial was held on June 25, 2008. The judge dismissed the lawsuit after Mr. Deutsch's testimony, holding that he was a public figure and that he had failed to demonstrate by clear and convincing evidence that Hale's statements were made with actual malice. Ms. Jordan, who had been subpoenaed by Hale to appear as a witness, did not testify, but she heard Mr. Deutsch's testimony.

After the judge's ruling, Mr. Deutsch announced to the media that he would be leaving his job. Ms. Jordan heard the announcement on the radio and met with Mr. Deutsch on June 26. He told her that he planned to leave City employment in about six months, and Ms. Jordan discussed a number of concerns she had with his performance. On July 1, 2008, Mr. Deutsch and Ms. Jordan met again.

Ms. Jordan told Mr. Deutsch that she was concerned that he had not testified truthfully at the defamation trial. Later that day she fired him.

In district court Ms. Jordan asserted that Mr. Deutsch had made the following false statements during his defamation-trial testimony: (1) that he did not know why the police department maintained a petty-cash balance of $2,400; (2) that he did not understand the petty-cash policy and that the policy was under revision; (3) that he did not know he had violated the petty-cash policy until informed by City officials; (4) that he promptly reimbursed the City for the laptop computer, as directed by Ms. Jordan; (5) that he was given a second chance to purchase the computer with public funds through the proper procedure; (6) that he had not been instructed on how to purchase the computer properly; (7) that he had provided all proper documentation for the laptop purchase; (8) that his administrative assistant had suggested that he use petty cash to purchase the computer; and (9) that he had permission to be reimbursed for the purchase. Mr. Deutsch countered with evidence that he had never made some of the allegedly false statements and that the statements he did make were true.

## B. Legal Background

### 1. First Amendment Rights of Public Employees

The First Amendment prohibits the government from punishing a person for exercising the right to free speech. When the government is the person's employer, however, the right to free speech is limited in ways that would

-4-

otherwise be unconstitutional. On one hand, "the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). But "[a]t the same time it cannot be gainsaid that the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general." *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968). Accordingly, we follow a five-step approach (the *Garcetti/Pickering* analysis) to determine whether the government employer has violated the employee's free-speech rights. The first step, which the Supreme Court announced only four years ago in *Garcetti*, is for the court to "determine whether the employee speaks pursuant to his official duties. If the employee speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007) (brackets, citation, and internal quotation marks omitted). If the speech is not pursuant to official duties, the second step (which, like the remaining three, derives from *Pickering*) requires the court to "determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, then the speech is unprotected and the inquiry

ends." *Id.* at 1202–03 (citations omitted). If the speech is on a matter of public concern,

> [t]hird, . . . the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer[;] [f]ourth, . . . the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision[;] [and fifth], if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* at 1203 (brackets, citations, and internal quotation marks omitted).

As a general rule, the district court resolves the first three steps, and the last two are jury questions. *See id.* But the first three may turn on resolution of a factual dispute by the jury (such as deciding precisely what the plaintiff said, which could affect the analysis of each of the first three steps), *see*, *e.g.*, *Casey v. City of Cabool*, 12 F.3d 799, 803 (8th Cir. 1993); and there may be no genuine issue of fact for the jury to resolve on the last two.

### 2. Qualified Immunity

Even if a public official violates an employee's First Amendment rights, the doctrine of qualified immunity may protect the official from personal liability. Under that doctrine, government officials performing discretionary functions are not liable "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "The protection

-6-

of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted); *accord Herrera v. City of Albuquerque*, 589 F.3d 1064, 1070 (10th Cir. 2009). The doctrine is intended "to shield [government officials] from undue interference with their duties and from potentially disabling threats of liability." *Harlow*, 457 U.S. at 806. Recognition of qualified immunity responds to the concern that absent such protection the "fear of being sued w[ould] dampen the ardor of all but the most resolute, or the most irresponsible public officials, in the unflinching discharge of their duties." *Id.* at 814 (brackets and internal quotation marks omitted).

## C. District-Court Proceedings

On August 18, 2008, Mr. Deutsch sued Ms. Jordan and the City. The defendants moved for summary judgment. The district court granted the motion on all claims except the First Amendment claim against Ms. Jordan in her individual capacity. The court rejected her contentions that Mr. Deutsch had testified pursuant to his official duties rather than as a citizen (step one under *Garcetti/Pickering*), and that his speech was not on a matter of public concern (step two). And it held that Mr. Deutsch's interest in exercising his First Amendment rights at his defamation trial outweighed the City's asserted interest in maintaining the public's perception of the integrity of the police department

(step three). Also, in rejecting Ms. Jordan's claim of qualified immunity under step three, the court ruled that it was a disputed issue of fact whether Ms. Jordan had fired Mr. Deutsch because she believed he had testified falsely.

## II.   MS. JORDAN'S APPEAL

Ms. Jordan appeals the district court's denial of summary judgment on Mr. Deutsch's First Amendment claim against her. She contends that she is entitled to qualified immunity because (1) Mr. Deutsch's testimony was not on a matter of public concern, and (2) even if it was, Ms. Jordan's reasonable belief that he had lied overrode his free-speech interests. After setting forth our standard of review, we take each of Ms. Jordan's contentions in turn, first addressing our jurisdiction and then, if allowable, the merits.

### A.   Standard of Review

Insofar as we have jurisdiction to review the denial of a qualified-immunity motion for summary judgment, our review is de novo. *See Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010). To defeat such a motion, the plaintiff must clear two hurdles. First, the plaintiff must show a violation of federal constitutional or statutory rights. *See Martinez v. Carr*, 479 F.3d 1292, 1295 (10th Cir. 2007). "Second, the plaintiff must show . . . that a reasonable [public official] would have known that his or her challenged conduct was illegal." *Id.* This second showing must overcome a claim that the official made a reasonable "mistake of law" (because the law was not clearly established),

a reasonable "mistake of fact," or a reasonable "mistake based on mixed questions of law and fact." *Pearson*, 129 S. Ct. at 815. "Although the plaintiff bears this burden, the evidence is reviewed in the light most favorable to the plaintiff when, as here, the defendant seeks summary judgment on the ground of qualified immunity." *Fletcher*, 605 F.3d at 1096.

**B.      Matter of Public Concern**

**1.      Jurisdiction**

Denials of summary judgment are "ordinarily not final judgments appealable under 28 U.S.C. § 1291." *Fletcher v. Burkhalter*, 605 F.3d 1091, 1096 (10th Cir. 2010). But a defendant may be entitled to appeal from a denial of a motion for summary judgment based on qualified immunity. *Id.* Qualified immunity is an immunity "*from suit* rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Because that immunity is "effectively lost if a case is erroneously permitted to go to trial," *id.*, the denial of summary judgment is, in a sense, a final decision on the immunity issue. Accordingly, the Supreme Court has declared that a denial of qualified immunity based on an abstract legal issue "is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." *Id.* at 530. On the other hand, "a portion of a district court's summary judgment order that, though entered in a 'qualified immunity' case, determines only a question of 'evidence sufficiency,' *i.e.*, which facts a party may, or may not, be

able to prove at trial . . . , is not appealable." *Johnson v. Jones*, 515 U.S. 304, 313 (1995). Although founded on principles of finality doctrine, this limitation on appealability is in large part a pragmatic accommodation, based on the assessment that appellate-court interlocutory review of the sufficiency of evidence can greatly burden appellate courts and delay the work of the trial courts while producing questionable benefits. *See id.* at 313–18.

In this case the question whether Mr. Deutsch's testimony was on a matter of public concern is an abstract legal issue. The relevant facts are undisputed. We therefore have jurisdiction to address the merits. *See McFall v. Bednar*, 407 F.3d 1081, 1086, 1088–89 (10th Cir. 2005).

### 2.  Merits

For Mr. Deutsch to prevail on his First Amendment claim, his testimony at the defamation trial must have been on a matter of public concern.[1]  "[P]ublic concern is something that is a subject of legitimate news interest; that is, a subject

---

[1]There is a debate on whether trial testimony is per se a matter of public concern. This circuit's precedents have not explicitly adopted a per se rule. Other circuits are split. Some hold that any trial testimony is a matter of public concern. *See, e.g.*, *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1578 (5th Cir. 1989) ("When an employee testifies before an official government adjudicatory or fact-finding body he speaks in a context that is inherently of public concern."); *Latessa v. N.J. Racing Comm'n*, 113 F.3d 1313, 1319 (3d Cir. 1997) (same). Some have not gone so far. *See, e.g.*, *Wright v. Ill. Dept. of Children & Family Servs.*, 40 F.3d 1492, 1505 (7th Cir. 1994); *Padilla v. S. Harrison R-II Sch. Dist.*, 181 F.3d 992, 996–97 (8th Cir. 1999). We do not enter the debate, because Mr. Deutsch has not argued the point and we affirm on the public-concern issue in any event.

of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147–48 (1983).

Ms. Jordan contends that Mr. Deutsch's testimony was not on a matter of public concern because of both the content and the context of his testimony. She emphasizes that his speech was not aimed at exposing wrongdoing by the government, and was made in pursuit of a grievance against a private citizen. We are not persuaded.

As we have stated, "speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials clearly concerns matters of public import." *Dill v. City of Edmond*, 155 F.3d 1193, 1202 (10th Cir. 1998) (ellipsis and internal quotation marks omitted). The public interest, however, does not end with the accusation of misconduct. Although the issue may arise rarely (because public employees are rarely punished for defending the integrity of their agencies), the response to an accusation is also a matter of public concern. One would hope that public attitudes toward a government agency are not set before both sides are heard. Thus, not only is speech alleging that the police chief misused city funds ordinarily speech on a matter of public concern, but so, too, is speech defending against such allegations.

-11-

The context of Mr. Deutsch's speech does not transform it from being speech on a matter of public concern. To be sure, when "determining whether speech pertains to a matter of public concern, the court may consider the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Brammer-Hoelter*, 492 F.3d at 1205 (internal quotation marks omitted). But the speaker's having a highly personal motive for a disclosure does not necessarily mean that the speech is not a matter of public concern. Whistle blowers may often bear personal grudges. Some subject matter is so imbued with the public interest that speech regarding it will almost always be a matter of public concern, whatever the context.

The Supreme Court's opinion in *Connick* is informative. Myers, an assistant district attorney in Connick's office, was unhappy about a change in her assignment. *See Connick*, 461 U.S. at 140. When she expressed her discontent and discussed a number of concerns with a supervisor, the supervisor suggested that others in the office did not share those concerns. *See id.* at 141. In response, Myers circulated a questionnaire to the other assistant district attorneys regarding office personnel-transfer policies, office morale, the need for a grievance committee, confidence in superiors, and pressure to work in political campaigns. *See id.* The Court held that all but the last question were not "of public import in evaluating the performance of the District Attorney as an elected official,"

-12-

because Myers was not "seeking[ing] to inform the public that the District Attorney's office was not discharging its governmental responsibilities in the investigation and prosecution of criminal cases . . . . [or] to bring to light actual or potential wrongdoing or breach of public trust on the part of Connick and others." *Id.* at 148. "[T]he focus of Myers' questions," said the Court, was "not to evaluate the performance of the office but rather to gather ammunition for another round of controversy with her superiors." *Id.* The Court recognized, however, that the same "subject matter could, in different circumstances, have been the topic of a communication to the public that might be of general interest." *Id.* at 148 n.8. And even in the context of Myers's questionnaire, asking whether assistant district attorneys "ever feel pressured to work in political campaigns on behalf of office supported candidates" did "touch upon a matter of public concern." *Id.* at 149 (internal quotation marks omitted). The Court observed that "there is a demonstrated interest in this country that government service should depend upon meritorious performance rather than political service." *Id.* *Connick* thus rejected a firm rule that the purpose of the speaker in itself will preclude speech from being on a matter of public concern.

*Brammer-Hoelter* made a similar distinction. We held that some of the plaintiffs' speech was a matter of personal, rather than public, concern because it was "inherently related" to plaintiffs' grievances with their employer regarding such matters as supervisor performance, pay, and workload. *Brammer-Hoelter*,

492 F.3d at 1206.  But we also held that "[s]peech concerning potential illegal conduct by government officials is inherently a matter of public concern" even if the plaintiffs' motivation was that the complained-of illegal conduct affected them.  *Id.*

Here, Mr. Deutsch testified at trial to satisfy a personal purpose; he certainly wished to clear his name.  But clearing his name and responding to a charge of public corruption amounted to the same thing.  The testimony at issue was a matter of public concern.[2]

### 2. Ms. Jordan's Belief that Mr. Deutsch Had Lied

Ms. Jordan's second argument on appeal is that she is not liable because she reasonably believed that Mr. Deutsch had lied in his trial testimony.  To determine whether we have jurisdiction to review this argument, we must begin by further exploring its substance.  The argument has two parts.  First, Ms. Jordan claims that an employee fails the third step of the *Garcetti/Pickering* test—balancing the competing interests—if the employee intentionally lies and is fired for doing so.  This would follow, she argues, because intentional falsehoods are not protected by the First Amendment, *see Andersen v. McCotter*, 205 F.3d 1214, 1219 n.1 (10th Cir. 2000), and, in any event, a public employer has a

---

[2]Ms. Jordan does not argue on appeal that even if Mr. Deutsch's testimony was on a matter of public concern, the law to that effect was not clearly established in the summer of 2008 (thus entitling her to qualified immunity).  But in our view the argument is a doubtful one anyway.

substantial interest in the integrity and credibility of its employees, especially a police chief. In other words, the interests of the government would outweigh the employee's unprotected interest. We can assume that Ms. Jordan is correct on this legal point.

But Ms. Jordan does not deny that there is a genuine factual dispute regarding whether Mr. Deutsch testified falsely. Therefore, she proceeds to the second step of her argument—a claim of qualified immunity. Even if Mr. Deutsch may have testified accurately, she says, she is still entitled to immunity because she believed that he had lied and her belief was reasonable. Again, we will assume, without deciding, that the legal proposition stated by Ms. Jordan is correct—that is, we will assume that a city manager who reasonably believes that the police chief has lied under oath on a matter of his official duties is entitled to qualified immunity if she fires him on that ground.[3]

The problem for Ms. Jordan, however, is that an underlying factual dispute deprives us of jurisdiction to address whether that legal proposition resolves this case. The district court ruled that there is a genuine factual dispute regarding

---

[3]It appears that there may not even be a constitutional violation if the government official reasonably (although incorrectly) believes facts about the employee's statement that would justify the action taken against the employee. *See Waters v. Churchill*, 511 U.S. 661, 675–78 (1994) (plurality opinion); *id.* at 685–86 (Souter, J., concurring) (explaining that plurality opinion expresses views of majority of Court); *Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1506–07 (7th Cir. 1994). But we need not decide that question on this appeal.

whether Ms. Jordan's "claimed reason for [Mr. Deutsch's] termination (her belief that his testimony was untruthful) is true." Order Granting in Part and Denying in Part Def.'s Mot. for Summ. J. at 45, *Deutsch v. Jordan*, No. 08-CV-191-J (D. Wyo. Apr. 13, 2009).[4] Thus, we cannot rule in Ms. Jordan's favor without reversing the district court's determination that there is a factual dispute regarding her state of mind. And a challenge to a determination that there is a factual dispute regarding a defendant's state of mind raises a "quintessential evidence-sufficiency issue" that we lack jurisdiction to review before final judgment. *Fletcher*, 605 F.3d at 1097. Therefore, we must let stand, at least for now, the district court's rejection of this qualified-immunity argument by Ms. Jordan.

At oral argument Ms. Jordan raised an interesting fall-back argument. She contended that even if she did not believe that Mr. Deutsch had lied during his testimony, she is entitled to qualified immunity so long as it would have been reasonable for her to believe that he had lied. She relied on qualified-immunity analysis in claims under the Fourth Amendment, in which courts have noted that the subjective state of mind of the law-enforcement officer being sued is irrelevant. *See, e.g.*, *Keylon v. City of Albuquerque*, 535 F.3d 1210, 1218 (10th

---

[4]There is some ambiguity regarding whether the district court was ruling (1) that there is evidence to support a finding that Ms. Jordan did not believe that Mr. Deutsch had lied, or (2) that there is evidence that even though Ms. Jordan believed that Mr. Deutsch had lied, she fired him because of other aspects of his testimony. Resolution of that ambiguity is unnecessary on this appeal.

Cir. 2008).  In these cases, the constitutionality of the officer's conduct depends only on what a reasonable officer would believe in the circumstances, not what the defendant officer subjectively believed.  We doubt the validity of her argument.  Unlike a Fourth Amendment claim, a First Amendment retaliation claim depends on the defendant's state of mind; whether the decision to fire violated the First Amendment turns on what motivated the person making the firing decision.  *See, e.g.*, *Couch v. Bd. of Trs.*, 587 F.3d 1223, 1239 (10th Cir. 2009) (retaliation claim failed because employee did not establish that his speech was a motivating factor behind adverse employment action).  In any event, we need not resolve this fall-back argument; it was raised too late in the appellate process, *see Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1235 n.8 (10th Cir. 2009) ("An argument made for the first time at oral argument . . . will not be considered.").

## IV.   CONCLUSION

We DENY Mr. Deutsch's motion to dismiss the appeal with respect to Ms. Jordan's challenge to the district court's ruling that his testimony was on a matter of public concern, but AFFIRM that ruling.  We GRANT Mr. Deutsch's motion to dismiss the appeal with respect to Ms. Jordan's challenge to the district court's ruling that there is a genuine factual issue regarding whether his First Amendment interests in testifying outweighed the City's interest as his employer

(namely, a factual issue regarding the reason for the firing) because we lack jurisdiction to review that sufficiency-of-the-evidence ruling.