**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 14, 2011**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

JOHN DAVID PALMER,

Plaintiff-Appellee,

v.

BOARD OF COMMISSIONERS FOR
PAYNE COUNTY OKLAHOMA;
NOEL BAGWELL; MARK HALL;
UNKNOWN DEPUTY SHERIFFS;
PAYNE COUNTY SHERIFF,

Defendants,

BRANDON MYERS,

Defendant-Appellant.

No. 11-6021
(D.C. No. 5:09-CV-00824-F)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **GORSUCH**, and **MATHESON**, Circuit Judges.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Payne County Jail Administrator Brandon Myers appeals from a district court order adopting the magistrate judge's recommendation to deny his motion for summary judgment on the ground of qualified immunity. Our review in such circumstances is limited. "Generally, we may not review a district court's factual conclusions, such as the existence of a genuine issue of material fact for a jury to decide, or that a plaintiff's evidence is sufficient to support a particular factual inference." *Dodds v. Richardson*, 614 F.3d 1185, 1192 (10th Cir. 2010) (internal quotation marks omitted). But, "[i]nsofar as we have jurisdiction to review the denial of a qualified-immunity motion for summary judgment, our review is de novo." *Deutsch v. Jordan*, 618 F.3d 1093, 1099 (10th Cir. 2010). Exercising de novo review over those aspects of Myers's appeal that are within our jurisdiction, we affirm for the reasons stated by the magistrate judge and the district court.

## I. Factual Background

While held as a pretrial detainee at the Payne County Jail, plaintiff John David Palmer suffered from an infection by the flesh-eating methicillin-resistent staphylococcus aureus (MRSA) bacteria. Mark Hall, the jail's medical transport officer, took plaintiff to Dr. Daniel P. Hill on the morning of August 2, 2007. Dr. Hill drained the boils plaintiff had developed, administered an injection of an antibiotic, and prescribed two more antibiotics for oral use at the jail. Although Dr. Hill did not actually diagnose plaintiff with MRSA during the visit, a jail

record prepared by Officer Hall upon their return reflected that plaintiff had been treated for MRSA (the diagnosis was later confirmed by lab tests). Dr. Hill advised that plaintiff should return for a follow-up visit in two days, but warned that if, in the interim, plaintiff developed a fever over 100 degrees or increased pain, he should be taken to the hospital. Officer Hall testified in his deposition that he conveyed this information to defendant Myers when he brought plaintiff back to the jail (and the magistrate judge noted this fact was undisputed).

Upon his return, plaintiff's condition worsened. The pain where the boils were increased to the point that he was vomiting, crying, and complaining that he needed to go to the hospital. He alleges that when defendant Myers came to the jail annex in response to his complaints, he reiterated Dr. Hill's instructions, told Myers how very sick he was, and asked Myers to take him to the emergency room. According to plaintiff, Myers told him to "shut the fuck up or go back to the main jail where you got the disease." Aplt. App. Vol. II at 256. According to Myers, "[t]o the best of my recollection, [plaintiff] did not tell me verbally that he was in need of medical care" and "I did not deny a request for medical care made by [plaintiff]." *Id.* Vol. I at 69. By the evening of the next day, plaintiff was taken to the emergency room. He was admitted and underwent surgery for the MRSA infection. In addition to the pain involved, he claims he suffered nerve damage and scarring and incurred over $24,000 in medical bills.

## II. Qualified Immunity Analysis

The magistrate judge correctly noted that "[i]t has been clearly established since 1976 that a jailer's failure to act in accordance with prescribed medical instructions can give rise to an Eighth Amendment claim." *Id.* Vol. II at 448 (citing *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976)); *see, e.g.*, *Howard. v. Dickerson*, 34 F.3d 978, 980-81 (10th Cir. 1994); *Ledoux v. Davies*, 961 F.2d 1536, 1537 (10th Cir. 1992).[1] After summarizing the conflicting accounts of the events at the jail noted above, the magistrate judge concluded that "[t]he evidence of whether Defendant Myers intentionally [refused to comply with Dr. Hill's medical instructions] is in dispute . . . and summary judgment [granting qualified immunity to Myers] is precluded." Aplt. App. Vol II at 448. The district court agreed, "conclud[ing] that there is sufficient evidence for a rational jury to find that defendant Myers knew plaintiff faced a substantial risk of harm and disregarded that risk." *Id.* at in 473.

Myers cannot challenge the conclusion that a reasonable jury could find he failed to follow Dr. Hill's instructions. "A district court's determination that the record raises a 'genuine issue of material fact,' precluding summary judgment in favor of the defendants, is not appealable even in a qualified immunity case."

---

[1]  It is also well-established that the Eighth Amendment principles discussed herein protect pretrial detainees under the Due Process Clause of the Fourteenth Amendment. *See Howard*, 34 F.3d at 980-81; *Martin v. Bd. of County Comm'rs*, 909 F.2d 402, 406 (10th Cir. 1990).

*Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301 (10th Cir. 2009) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). This general rule "has attracted exceptions that we must also consider," *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010), but the two relevant exceptions identified in *Lewis* do not apply here.

First, when the district court "fails to identify the particular charged conduct that it deemed adequately supported by the record, we may look behind the order denying summary judgment and review the entire record *de novo* to determine for ourselves as a matter of law which factual inferences a reasonable jury could and could not make." *Id.* This exception is not applicable here; it is quite clear what conduct the district court was referring to when it held that a rational jury could find Myers knew and disregarded a substantial risk of harm to plaintiff.

Second, "when the 'version of events' the district court holds a reasonable jury could credit 'is blatantly contradicted by the record,' we may assess the case based on our own *de novo* view of which facts a reasonable jury could accept as true." *Id.* at 1225-26 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007), in which the Supreme Court refused to credit a version of events flatly contradicted by a video recording). That is also clearly not the case here.

We are thus left to review one straightforward legal question: did Myers's alleged refusal to take plaintiff to the hospital in accord with Dr. Hill's directions, after plaintiff told Myers how sick he had become and asked to be taken to the

hospital, provide a basis upon which Myers could be held to have violated clearly established law? The answer, on our record and under the case law cited above, must be yes. Myers seeks to avoid this conclusion by arguing that, even on plaintiff's version of the facts, he did not know or appreciate the seriousness of plaintiff's condition and, in particular, did not know plaintiff was suffering from MRSA. But such lay ignorance of medical matters is precisely the reason for the rule noted earlier that noncompliance with the treatment prescribed by medical professionals is one form of deliberate indifference. When the seriousness of a medical need is not "so obvious that even a lay person would easily recognize the necessity for [medical] attention,'" it is nevertheless sufficient to support a claim of deliberate indifference if "'it is one that has been diagnosed by a physician as mandating treatment.'" *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

Of course, to satisfy the subjective component of such a claim, Myers must be shown to have known and disregarded the risk involved. *Id.* "'Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.'" *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994) (brackets omitted)). Here, where Myers knew that the treating physician's directions were to take plaintiff directly to the hospital, a jury could surely infer from the circumstances that

Myers knew of and intentionally disregarded a substantial risk to plaintiff's health. Myers further argues that his knowledge derived solely from plaintiff's own reported complaints and that "[s]uch a subjective assessment of his own illness by Plaintiff, without proof of Myers's knowledge of any objective signs or symptoms thereof, is simply insufficient to establish that Myers's alleged denial of medical care to Plaintiff . . . was in contravention of Dr. Hill's instructions." Aplt. Br. at 23. Myers cites no authority for the premise of this argument, i.e., that a prison officer can ignore an inmate's complaints of pain because they are subjective. And that premise is particularly inapt in this case, where the treating physician's instructions were in relevant part specifically conditioned on the subjective symptom of increased pain–a symptom communicated by plaintiff under circumstances (on his version of the facts) that clearly supported rather than belied its authenticity.

### III. Conclusion and Attorney Fee Request

For the foregoing reasons, we conclude the district court properly denied Myers's motion for summary judgment on the ground of qualified immunity. Plaintiff has requested an award of attorney fees and costs in the event we affirm the decision of the district court. Costs are, of course, "taxed against the appellant" when "a judgment is affirmed." Fed. R. App. P. 39(a)(2). Plaintiff does not cite any authority for his fee request, but we assume it is made pursuant

to 42 U.S.C. § 1988(b).[2]  As such, it is premature.  Although he has succeeded in defending the denial of summary judgment to defendant Myers, he has yet to affirmatively establish his right to any relief on his claims.  "[A] plaintiff [must] receive at least some relief on the merits of his claim before he can be said to prevail [for purposes of fees under § 1988]."  *Hewitt v. Helms*, 482 U.S. 755, 760 (1987); *see, e.g.*, *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (denying § 1988 fee request made by plaintiff who prevailed on qualified-immunity appeal, holding "[i]t must abide the determination on the merits").

The judgment of the district court is AFFIRMED.  Appellee's request for attorney fees is DENIED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

[2]    The request for fees was not made by separate motion as required under Fed. R. App. P. 38 for awards in the nature of sanctions. *See Anchondo v. Anderson, Crenshaw & Assocs.*, 616 F.3d 1098, 1107 n.10 (10th Cir. 2010).  But because we may consider fee requests made, as here, in appellate briefs if they are based on an independent statutory authorization for fees, *id.*, plaintiff's request would be procedurally valid under § 1988.