FILED
United States Court of Appeals
Tenth Circuit

December 30, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

BRUCE R. FIELD,

        Plaintiff-Appellant,

v.

BOARD OF WATER
COMMISSIONERS, City and County
of Denver,

        Defendant-Appellee.

No. 11-1191
(D.C. No. 1:09-CV-02247-MSK-MEH)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, Circuit Judge, **PORFILIO**, Senior Circuit Judge, and
**MATHESON**, Circuit Judge.

Bruce R. Field initiated this wrongful termination action against his former

employer, the Board of Water Commissioners for the City and County of Denver

("Denver Water").  Mr. Field advanced three retaliation claims under 42 U.S.C.

§ 1983, 42 U.S.C. § 1981, and Title VII of the Civil Rights Act of 1964,

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is
therefore ordered submitted without oral argument.  This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel.  It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

42 U.S.C. § 2000e *et seq.*, respectively, but the district court granted summary judgment to Denver Water and dismissed the case with prejudice. We affirm.

I

The district court detailed the background of this case, and we discuss only the salient facts necessary to understand the district court's decision. Mr. Field worked at Denver Water from October 2002 until October 2008. In January 2007, Mr. Field was promoted to the position of Construction Project Manager III, and, in that capacity, he was charged with "advanced field and key administrative construction engineering duties, handling complex problems relating to all types of projects in the areas of inspection, construction, project coordination and schedule, contract interpretation and negotiation, and approval of change orders." R. Vol. 1 at 80. Mr. Field's supervisor, Michael Leister, was Chief of Construction Management, and he reported to the Director of Engineering, Robert Mahoney. Mr. Mahoney, in turn, reported to the Manager of Denver Water, who is overseen by the Board of Water Commissioners. The board members of Denver Water are selected by the Mayor of Denver.

In May 2007, Mr. Field came to suspect misconduct between senior engineers at Denver Water and the contractors at three projects he was working on. Mr. Field expressed his concerns through the following communications that he claims were not made pursuant to his official duties: On May 25, 2007, Mr. Field sent an email to Mr. Mahoney, stating that there was a "questionable

-2-

spreadsheet error" resulting in "additional compensation" for one of the project contractors. *Id.* at 231-32. Although he denied the contractor's pay applications, Mr. Mahoney directed him to sign the applications because an "'office' decision [had been] made . . . to accept the 'error'" and "move on." *Id.* at 231. On June 2, 2007, however, Mr. Field called the Denver Auditor's Office, which must approve all Denver Water bonds and contracts, and notified them of his concerns "regarding the costs, contracts and other issues" implicated by the three construction projects. *Id.* at 271. He was told that his concerns would be reviewed, but he received no response until July 17, 2008, when the auditor's office contacted him by phone and told him that "everything was straighten[ed] out." *Id.* When Mr. Field insisted that nothing had been straightened out, the auditor's office asked him to send them his concerns via email.

The next day, Mr. Field sent an email to Breckenridge Grover, the Director of Contracts and Accountability for the Denver Auditor's Office. Mr. Field told Mr. Grover about "long standing friendships" between "preferred" contractors and senior engineering officials at Denver Water. *Id.* at 274 (internal quotation marks omitted). Mr. Field questioned how the preferred contractors were selected for the projects, who reviewed and approved the construction contracts, and whether the profit percentages were fair and reasonable. He also indicated that by his estimates, the preferred contractors were allowed to reap "unearned compensation of potentially over $6.0 million." *Id.* When Mr. Grover assured Mr. Field that

-3-

the matter would be referred for internal audit, Mr. Field replied that the auditor's office was charged with investigating his allegations and that the issue was a matter of public concern. He also reminded Mr. Grover that retaliation was prohibited, and he stated, "As the designated Denver Water employee responsible for oversight on these projects, I have the responsibility to report these concerns." *Id.* at 273.

Mr. Field maintained his efforts to expose the purported corruption at Denver Water. On August 8, 2008, he sent an email to the Denver Mayor's office requesting an investigation into "serious problems on construction projects at Denver Water." *Id.* at 367. He later sent another email to his supervisor and an engineer, outright refusing to authorize a contractor-pay application until two project-investigations were completed. He also sent a letter to the American Civil Liberties Union ("ACLU"), charging "corruption and abuse of power" at Denver Water, *id.* at 427, and alerting them that a colleague, Jim Phillips, had been fired for reporting similar misconduct. Additionally, Mr. Field sent an email directly to Denver Water, urging an investigation into what he characterized as "white collar crime," *id.* at 260 (internal quotation marks omitted). Denver Water assured Mr. Field they were retaining a national auditing firm to conduct an external review, but he alleged the firm was unqualified and biased.

Meanwhile, Mr. Field's supervisor issued a recommendation for corrective action against Mr. Field. In the recommendation, Mr. Leister noted that an

internal auditor had "seen nothing so far that [could] not be corrected by getting invoices, and by auditing after project closeout." *Id.* at 252. He reported that Mr. Field was insubordinate and "willing to go to extreme lengths to prove his unreasonable belief that the . . . contractors and [Denver Water] management are corrupt." *Id.* at 253. Citing these and other reasons, Mr. Leister recommended that Mr. Field be terminated.

This recommendation was received by Mr. Mahoney, who later met with Mr. Field and then sent him a letter informing him that no action would be taken pending his completion of several tasks. Among the assigned tasks, Mr. Mahoney afforded Mr. Field "a final opportunity to address outstanding contract issues in a professional and meaningful way." *Id.* at 257. When Mr. Field failed to complete the assignments in a satisfactory manner, Mr. Mahoney fired him on October 13, 2008. By letter, Mr. Mahoney stated that Mr. Field's "repeated and escalating accusations of fraudulent and criminal activity by others without any evidence is in bad faith." *Id.* at 269. He continued, "And, if you have information that supports your claims and you are withholding it, then you are placing your own interests above Denver Water's by impeding the investigation." *Id.* Mr. Mahoney believed that Mr. Field could not to produce "detailed allegations and supporting information because [his] claims that there ha[d] been criminal and fraudulent activity [were] not true." *Id.* Hence, Mr. Field was fired for failure to perform job duties, insubordination, and conduct resulting in material impairment of work.

II

Mr. Field subsequently initiated this lawsuit, raising three claims for relief. He first claimed his termination was retaliatory and pursuant to a "custom, policy or usage" that violated his First Amendment rights. *Id.* at 41. He next claimed his termination violated 42 U.S.C. § 1981 because it was done in retaliation for opposing discriminatory conduct directed at his colleague, Mr. Phillips, who was African-American. Finally, Mr. Field claimed that his termination was in retaliation for his participating in activity protected by Title VII. The district court rejected all of these claims.

At the outset, the district court observed that Mr. Field failed to establish municipal liability against Denver Water because there was no evidence that the alleged misconduct resulted from a municipal policy or custom. *See id.* at 550 (citing *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993) (holding that municipal liability does not arise because government employees injure the plaintiff; rather, the plaintiff must show a municipal policy or custom and a direct causal link between the policy or custom and the alleged injury)). Despite this deficiency, however, which the court found to be dispositive, the court concluded that all of Mr. Field's claims lacked merit.

Indeed, the court rejected the First Amendment claim because Mr. Field did not satisfy the five-step *Garcetti/Pickering* analysis. *See Garcetti v. Ceballos*,

547 U.S. 410, 417 (2006); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 569 (1968).[1]

In particular, the court determined that Mr. Field failed at the first step of the analysis because his communications were made pursuant to his official job duties. The court recognized that Mr. Field expressly stated that "[a]s the designated Denver Water employee responsible for oversight on these projects, I have a responsibility to report these concerns." R. Vol. 1 at 273. And, the court pointed out that all but one of Mr. Field's communications were directed at people in his chain of command. *See Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) ("[S]peech directed at an individual or entity

---

[1]     The *Garcetti/Pickering* analysis is used to determine whether a government employer has violated its employee's rights to free speech. The first step examines whether the employee's speech was made pursuant to his official duties. If so, "there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Deutsch v. Jordan*, 618 F.3d 1093, 1097 (10th Cir. 2010) (internal quotation marks omitted). "If the speech is not made pursuant to official duties, the second step . . . requires the court to determine whether the subject of the speech is a matter of public concern. If the speech is not a matter of public concern, the speech is unprotected and the inquiry ends." *Id.* (internal quotation marks omitted). If, however, the speech is a matter of public concern,

> third, the court must determine whether the employee's interest in commenting on the issue outweighs the interest of the state as employer; fourth, the employee must show that his speech was a substantial factor or a motivating factor in a detrimental employment decision; and fifth, if the employee establishes that his speech was such a factor, the employer may demonstrate that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* at 1097-98 (quotation, brackets, and ellipses omitted).

within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*.").  Although the excepted communication---the letter to the ACLU---was not directed to anyone in Mr. Field's chain of command, the court observed that there was no evidence Denver Water knew of this letter so as to establish causation.  Accordingly, the court granted summary judgment to Denver Water on the First Amendment claim.

As for Mr. Field's claims pursuant to 42 U.S.C. § 1981 and Title VII, they were predicated on Mr. Field's allegations that a contractor made discriminatory remarks about Mr. Phillips.  Mr. Field alleged these remarks were made ten to twenty times while he worked with Mr. Phillips from mid-2006 until April 2007, and he asserted he was fired for reporting this discriminatory treatment to his superiors.

Rejecting these claims, the district court set forth the shared standard for establishing a prima facie case of retaliation, *see* R. Vol. 1 at 556 (citing *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) ("The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981.")), but the court concluded there was no evidence of causation.[2]  The court recognized that a "plaintiff 'may establish the causal

---

[2]

> A prima facie case of retaliation requires a plaintiff to show (1) that she engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action

(continued...)

-8-

connection by proffering evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.'" *Id.* (quoting *Annett v. Univ. of Kan.*, 371 F.3d 1233, 1239-40 (10th Cir. 2004)). But because the temporal proximity between Mr. Field's report of discrimination and his firing some seventeen months later was so great, the court ruled that Mr. Field could not establish causation by temporal proximity alone. *Cf. Haynes v. Level 3 Comms., LLC*, 456 F.3d 1215, 1228 (10th Cir. 2006) (noting that seven-month and three-month periods were insufficient to establish causation). And, because Mr. Field offered no other evidence of causation, the court granted Denver Water summary judgment on the § 1981 and Title VII claims as well.

## III

"We review the district court's grant of summary judgment de novo, applying the same legal standard used by the district court." *Somoza*, 513 F.3d at 1211 (internal quotation marks omitted). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

---

[2](...continued)
> materially adverse – that is, that the action might dissuade a reasonable worker from making or supporting a charge of discrimination, and (3) that a causal connection exists between the protected activity and the materially adverse action.

*E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 803 (10th Cir. 2007) (citation, internal quotation marks, and brackets omitted).

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In reviewing the grant of summary judgment, "[w]e examine the factual record and draw all reasonable inferences in the light most favorable to the non-moving party." *Somoza*, 513 F.3d at 1211.

On appeal, Mr. Field contends the district court incorrectly applied our summary judgment standard. He broadly challenges the court's evaluation of the evidence, asserting the court viewed the evidence favorably to Denver Water and ignored disputed facts. He also insists his Seventh Amendment right to a jury trial was violated by the court's resolution at summary judgment. Finally, Mr. Field contends the *Garcetti/Pickering* analysis is inapplicable to his First Amendment claim because his communications were not made pursuant to his official job duties.

Mindful of Mr. Field's pro se status, we have reviewed the parties' appellate materials, the record on appeal, and the relevant legal authority, and we perceive no error in the district court's analysis. The court correctly evaluated the evidence in accord with the governing legal principles and concluded that Denver Water was entitled to summary judgment. The court's proper resolution at summary judgment did not violate Mr. Field's Seventh Amendment rights. *See Shannon v. Graves*, 257 F.3d 1164, 1167 (10th Cir. 2001) ("The Seventh Amendment is not violated by proper entry of summary judgment because such a ruling means that no triable issue exists to be submitted to a jury."). Nor did the

-10-

court err in adjudicating Mr. Field's claims. To the contrary, the court accurately and thoroughly examined Mr. Field's claims and concluded they were all meritless. Because we cannot improve upon the court's detailed and well-reasoned analysis, we AFFIRM the district court's judgment for substantially the same reasons stated in the court's order dated March 28, 2011. All outstanding requests for relief are DENIED.

Entered for the Court


John C. Porfilio
Senior Circuit Judge